UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| DATAQUILL LIMITED,<br>　　　　　Plaintiff,<br>v.<br><br>ACER AMERICA CORPORATION and ACER INC.,<br>　　　　　Defendants. | Case No.  6:20-cv-17<br><br>COMPLAINT FOR PATENT INFRINGEMENT AND JURY TRIAL DEMANDED |

# COMPLAINT

This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, against Defendants Acer Inc. and Acer America Corporation ("Acer" or "Defendants") that relates to a U.S. patent owned by DataQuill Limited ("DataQuill"): 6,058,304 (the "Patent-in-Suit").

## PARTIES

1.　　Plaintiff DataQuill is a limited liability company organized under the laws of the British Virgin Islands.

2.　　Upon information and belief, Defendant Acer Inc. is a corporation organized and under the laws of Taiwan, with a principal place of business at 1F, 88, Sec. 1, Xintai 5th Rd., Xizhi, New Taipei City 221, Taiwan. On information and belief, Acer, Inc. can be served through its resident agent for service of process in Texas: Arthur Gentry, 5105 34th St., Lubbock, TX 79414.

3.　　Upon information and belief, Defendant Acer America Corporation is a corporation that operates a regular and established place of business, which includes at least a repair and service facility, at 1394 Eberhardt Rd, Temple, Texas 76504. This office is within the Western District of

Texas. Upon information and belief, Defendant Acer America Corporation also operates a regular and established place of business at 900 Guardians Way, Allen, Texas 75013.

4. Acer makes, uses, imports, sells, and offers for sale wireless mobile devices including smartphones, tablets, and related applications and services.

## JURISDICTION AND VENUE

5. This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, and more particularly 35 U.S.C. § 271.

6. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

7. Acer is subject to this Court's general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, due at least to its substantial business conducted in this District, including: (i) having solicited business in the State of Texas, transacted business within the State of Texas and attempted to derive financial benefit from residents of the State of Texas in this District, including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed its products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in Texas and in this District, including repair and service, and (iii) having committed the complained of tortious acts in Texas and in this District. Alternatively, this Court has personal jurisdiction over Acer, Inc. pursuant to Federal Rule of Civil Procedure 4(k)(2) based on Acer, Inc.'s contacts with the United States as a whole.

8. Acer, directly and/or through subsidiaries and agents (including distributors, retailers, and others), makes, imports, ships, distributes, offers for sale, sells, uses, and advertises (including offering products and services through its website, https://us-store.acer.com, as well

as other retailers) its products and/or services in the United States, the State of Texas, and the Western District of Texas. Acer, directly and/or through its subsidiaries and agents (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Western District of Texas. These infringing products and/or services have been and continue to be purchased and used by consumers in the Western District of Texas. Acer has committed acts of patent infringement within the State of Texas and, more particularly, within the Western District of Texas.

9. Venue is proper as to Acer, Inc. because 28 U.S.C. § 1391(c)(3) provides that "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."

10. Venue as to Acer America Corporation is proper in this District under §1400 (b), which provides that "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

## BACKGROUND FACTS REGARDING THE DATAQUILL PATENT

11. DataQuill is the owner of record and assignee of U.S. Patent No. 6,058,304 ("the '304 Patent" or "Patent-in-Suit").

12. DataQuill has sought to protect its invention through a licensing program (which has on several occasions required litigation). Many of the largest high-tech companies, including HTC, Nokia, Motorola, LG, Samsung, Palm, and Hewlett-Packard, have purchased a license to

3

DataQuill's patent portfolio. To date, DataQuill has obtained over $125 million in licensing revenue.

13. The value of DataQuill's asserted patent is further demonstrated by DataQuill's repeated success against validity challenges. The asserted patent has been through reexaminations at the United States Patent & Trademark Office where hundreds of references have been considered.

14. In prior litigations, the Patent-in-Suit withstood heavy scrutiny, including motions for summary judgment of anticipation, obviousness, inequitable conduct, lack of enablement, and lack of an adequate written description—all of which were resolved in DataQuill's favor. Most recently, a jury returned a verdict finding certain claims of the '304 Patent valid and infringed in a case against ZTE. The jury determined that DataQuill had been damaged in the amount of $31,500,000.

## THE PATENT-IN-SUIT AND CLAIMS-IN-SUIT

15. DataQuill has the exclusive right to sue and the exclusive right to recover damages for infringement of the Patent-in-Suit during all relevant time periods.

16. On May 2, 2000, the '304 Patent entitled "Data Entry Systems" was duly and legally issued by the USPTO. On April 13, 2010, the USPTO issued an Ex Parte Reexamination Certificate for the '304 Patent.

## ACER'S INFRINGING PRODUCTS

17. Acer made, used, offered for sale, sold, and/or imported into the United States smartphones that enable users to browse and download items such as apps, games, ringtones, music, videos, books, and magazines. The devices are collectively referred to as "Accused Acer Smartphones") and include, but are not limited to, the following models: Acer Liquid A1, Liquid

E3, Liquid E600, Liquid E700, Liquid Jade, Liquid Jade 2, Liquid M220, Liquid S1, Liquid S2, Liquid X1, Liquid X2, Liquid Z200, Liquid Z220, Liquid Z3, Liquid M320, Liquid M330, Liquid Z410, Liquid Z5, Liquid Z500, Liquid Z520, Liquid Z530, Liquid Z630, Liquid Zest, Predator 8, and other Acer devices that incorporated a touch-sensitive screen and the Android operating system.

18.     The Accused Acer Smartphones are all Acer Smartphones that incorporated a touch-sensitive screen and the Android operating system that were offered for sale or sold in the United States between the period that is six years before the filing date of this complaint and the expiration of the Patent-in-Suit.

19.     Acer directly infringed claims of the Patent-in-Suit under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing Accused Acer Smartphones in this District and elsewhere in the United States that include the systems claimed in the Patent-in-Suit and/or by using the methods claimed in the Patent-in-Suit, including, for example, Acer's use of said methods during set-up, testing, and demonstration of Accused Acer Smartphones.

20.     Acer induced the direct infringement of method claims of the Patent-in-Suit pursuant to U.S.C. § 271(b) at least by one or more of making, using, offering for sale, selling and/or importing Accused Acer Smartphones in this District and elsewhere in the United States that were designed and intended to use and/or practice the methods and processes covered by the Patent-in-Suit.  Further, Acer induced infringement by, for example, providing user guides and other support materials and services to its users and by advertising features that are used, and benefits that are achieved through use of the Patent-in-Suit.

21.     Despite Acer's awareness of the Patent-in-Suit, Acer has continued these acts of inducement with specific intent to cause and encourage direct infringement of the Patent-in-Suit

with willful blindness that such activities occurred, are still occurring, and constitute direct infringement of the Patent-in-Suit.

### ACER'S KNOWLEDGE OF THE PATENT-IN-SUIT, HOW ACER INFRINGES THEM, AND ACER'S CONTINUED INFRINGEMENT DESPITE THAT KNOWLEDGE

22. DataQuill, through counsel, provided notice to Acer regarding the '304 Patent by a letter dated December 23, 2009. Attached to the December 2009 letter was a copy of the '304 Patent.

23. Acer did not enter into a license agreement with DataQuill following the December 2009 letter.

24. Despite knowledge of the Patent-in-Suit and knowledge of the manner in which the Patent-in-Suit was infringed, Acer continued to infringe, and induce the infringement of, the Patent-in-Suit.

### COUNT I: INFRINGEMENT OF PAT. 6,058,304

25. DataQuill reasserts and realleges paragraphs 1 through 24 of this Complaint as though set forth fully here.

26. Acer directly infringed the '304 Patent in the state of Texas, in this judicial district, and elsewhere within the United States by making, using, offering for sale, selling, and/or importing Accused Acer Smartphones that infringe one or more claims of the '304 Patent.

27. Accused Acer Smartphones sold by Acer infringed claim 113 of the '304 Patent, for example as explained in the following paragraphs (26–36).

28. The Accused Acer Smartphones are handsets and may be held in a user's hand.

29. Each Accused Acer Smartphone contains at least one reading sensor. "Reading sensor" has been repeatedly construed by several courts to cover a touchscreen. Each Accused

Acer Smartphone has a touchscreen. The touchscreen is a reading sensor for sensing commands and/or data. The touchscreen produces input signals in response to the commands and/or data.

30. For example, the touchscreen of each Accused Acer Smartphone can sense commands and/or data that enable a user to navigate and download Google Play Products from Google Play.

31. Each Accused Acer Smartphone contains rewritable storage including caches and internal memory. The rewritable storage is made of solid-state memory (e.g., RAM, Flash) and is remotely programmable with information and selectable items relating to a plurality of items (e.g., items available through a catalogue of merchandise including Google Play such as Google Play Products).  The items can include, for example, songs, videos, books, magazines, and other items.

32. The plurality of items of each Accused Acer Smartphone are user selectable by means of the touchscreen.

33. The Accused Acer Smartphones contain a controller connected to receive and process input signals from the touchscreen (e.g., circuitry connected to the touchscreen including the touchscreen controller and processor). This circuitry responds to commands, sensed commands, and data to control the Accused Acer Smartphones and to select items.

34. The Accused Acer Smartphones contain a display screen for displaying a user-readable representation of commands and stored information for selected items. The display screen is the touch screen.

35. The Accused Acer Smartphones contain a telecommunications interface (e.g., GSM, 3G, 4G, LTE, or other circuitry). The telecommunications interface provides for telephonic transmission and reception of information relating to a selected item or items from the

phone's storage to a remote processing center (e.g., the servers that operate Google Play).

36. The contoller of each Accused Acer Smatphone is configured to respond to an update command by downloading updated information from the server.

37. The Accused Acer Smartphones include a speaker and a microphone and can be used as a telephone handset.

38. The Accused Acer Smartphones include programs (e.g., the Android operating system) that can be updated remotely from the processing center.

39. In addition to claim 113, Acer infringed at least the following claims of the '304 Patent: 9, 20, 23, 32, 34, 40, 53, 55, 59, 60, 64, 97, 98, 114, 116, and 117.

40. Acer is thus liable for infringement of the '304 Patent under 35 U.S.C. § 271(a).

41. With knowledge of the '304 Patent and knowledge of the infringing nature of Accused Acer Smartphones (or, at a minimum, willful blindness thereto), Acer has encouraged its retailers to directly infringe the '304 Patent by offering to sell and selling these devices to end user consumers. Acer knew of and intended to cause its retailers' direct infringement and is therefore liable for inducing their infringement of the '304 Patent under 35 U.S.C. § 271(b).

42. With knowledge of the '304 Patent and knowledge of the infringing nature of Accused Acer Smartphones (or, at a minimum, willful blindness thereto), Acer has encouraged end users to directly infringe the '304 Patent by using these devices. Acer has marketed, promoted, and instructed users to use these devices in an infringing manner. This marketing, promotion, and instruction has specifically included instructions to use the device's functionality to download apps, games, music, videos, books, magazines, and/or ringtones. Acer knew of and intended to cause its end users' direct infringement and is therefore liable for inducing their infringement of the '304 Patent under 35 U.S.C. § 271(b).

43. As a result of its infringement of the '304 Patent, Acer has damaged DataQuill. Acer is liable to DataQuill in an amount to be determined at trial that adequately compensates DataQuill for the infringement, which by law can be no less than a reasonable royalty.

44. Because Acer knew of the '304 Patent and its infringement thereof (as detailed above), Acer's infringement of the '304 Patent is therefore willful and deliberate, entitling DataQuill to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## JURY DEMAND

DataQuill demands a trial by jury on all issues that may be so tried.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff DataQuill Limited requests that this Court enter judgment in its favor and against Defendant Acer Inc. as follows:

A. Adjudging, finding, and declaring that Acer has infringed the above-identified claims of the Patent-in-Suit under 35 U.S.C. § 271;

B. Awarding the past and future damages arising out of Acer's infringement of the Patent-in-Suit to DataQuill in an amount no less than a reasonable royalty, together with prejudgment and post-judgment interest, in an amount according to proof;

C. Adjudging, finding, and declaring that Acer's infringement is willful and awarding enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

D. Adjudging, finding, and declaring that the Patent-in-Suit is valid and enforceable;

E. Awarding attorneys' fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law; and

F.  Granting DataQuill such other further relief as is just and proper, or as the Court deems appropriate.

Dated: January 10, 2020

Respectfully submitted,

/s/ Alison Aubry Richards
Alison Aubry Richards
IL Bar # 6285669 (*also admitted in WD Texas*)
Global IP Law Group, LLC
55 West Monroe Street, Suite 3400
Chicago, IL 60603
Telephone: (312) 241-1500
arichards@giplg.com

*Attorney for Plaintiff*
*DataQuill Limited*